UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANK J. FERTITTA III and EYKYN MACLEAN, LP,

          Plaintiffs,

- against -

KNOEDLER GALLERY, LLC d/b/a KNOEDLER & COMPANY; 8-31 HOLDINGS, INC.; MICHAEL HAMMER; ANN FREEDMAN; JAIME ANDRADE; GLAFIRA ROSALES; JOSE CARLOS BERGANTIÑOS DIAZ; JESUS ANGEL BERGANTIÑOS DIAZ; OLIVER WICK; URS KRAFT; and John Does # 1 to 10,

          Defendants.

14-cv-02259 (JPO) (HBP)

---

## PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, COSTS, AND DISBURSEMENTS

Plaintiffs Frank J. Fertitta, III and Eykyn Maclean, LP (collectively, "Plaintiffs") respectfully submit this Application for attorneys' fees, costs, and disbursements pursuant to 18 U.S.C. § 1964(c) and the Default Judgment of this Court entered on August 6, 2018.

Plaintiffs commenced this action on April 1, 2014 [ECF 1 and 2] and filed an amended complaint on May 13, 2014 [ECF 15]. Plaintiffs asserted claims under the Racketeering Influenced and Corrupt Organizations ("RICO") Act against *inter alia* Defendants Jose Carlos Bergantiños Diaz, Jesus Angel Bergantiños Diaz (together, the "Bergantiños Brothers"), and Glafira Rosales. Despite being served [ECF 89, 97, and 102], Rosales and the Bergantiños Brothers (collectively "Defaulting Defendants") chose to default, and on April 6, 2016 the Court entered an order of default and referred the matter to Magistrate Judge Henry B. Pitman for an inquiry into damages [ECF 146]. Judge Pitman subsequently issued a Report and

73339598.3

Recommendation recommending that the Court award Plaintiffs treble damages, as well as their costs, disbursements, and attorneys' fees incurred in prosecuting this RICO suit pursuant to 18 U.S.C. § 1964(c) [ECF 169], and that Report and Recommendation was adopted by the Court on August 2, 2018 [ECF 175].

The Order adopting the Report and Recommendation provided four weeks for Plaintiffs to submit their application for attorneys' fees, disbursements, and costs, and Plaintiffs do so by submitting this Application.  Specifically, Plaintiffs request $164,244.44 in attorneys' fees, $400 in costs, and $3,965.99 in disbursements.  The attorneys' fees reflect reasonable work, in view of the complexity involved in obtaining the Default Judgment, billed at a reasonable rate commensurate with prevailing rates for comparable work in the Southern District of New York.

**ARGUMENT**

**I.     Plaintiffs Are Entitled to Recovery of Attorneys' Fees in Connection with this Suit**

   **A.     Plaintiffs Are Entitled to Their Reasonable Attorneys' Fees**

It is well settled that a prevailing plaintiff in a civil RICO case is entitled to an award of reasonable attorneys' fees.  18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter … shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee …").

Courts in the Second Circuit apply a "presumptively reasonable fee" approach in determining the amount of attorneys' fees to award pursuant to 18 U.S.C. § 1964(c).  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  This approach entails multiplying the attorney's reasonable billing rate by the reasonable number of hours spent on the case.  *See id.*  In setting the reasonable hourly rate, the Court must "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified

as relevant to the reasonableness of attorney's fees." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011).

In determining whether attorneys' fees are reasonable, the Court considers the overall "complexity and difficulty of the case," *Arbor Hill*, 522 F.3d at 184, as well as such factors as "the time and labor required," "the novelty and difficulty of the questions," "the level of skill required to perform the legal service properly," "the attorney's customary hourly rate," "the amount involved in the case and the results obtained," and "the experience, reputation, and ability of the attorneys." *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)) (enumerating twelve relevant factors district courts should consider in establishing a reasonable fee). The Court has considerable discretion in conducting its presumptively reasonable fee analysis. *See Arbor Hill*, 522 F. 3d at 190; *see also Regeneron Pharm., Inc. v. Merus N.V.*, No. 14-cv-1650 (KBF), 2018 WL 3425013, at *3 n.5 (S.D.N.Y. June 25, 2018) (stating that the twelve *Johnson* factors are "useful, but neither exclusive nor dispositive").

   **B.**  **The Hours Spent by Plaintiffs' Counsel Were Reasonable**

The Second Circuit has held that "[i]n reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). The critical inquiry is whether the hours spent were "usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

The hours spent by Plaintiffs' attorneys in this case were reasonably necessary. Any civil RICO suit is a costly, fact-intensive endeavor, and this multi-defendant suit was particularly complex. It was one of several in this District concerning an international art fraud involving one of the oldest art galleries in the United States. The resulting exposure forced the gallery to

close after 165 years of operation.  The case involved several international fugitives, including the Bergantiños Brothers multiple layers of corporate shells shielding assets international bank transactions, and hidden parties (despite contractual obligations to disclose them, as Magistrate Judge Pitman eventually ruled [ECF 76]).  The dispute has been described as "one of the world's biggest art frauds [perpetrated] over two decades to the United States."  *Spain Agrees to Extradite Major Art Fraud Suspect Jesus Angel Bergantinos Diaz to US*, ABC (Feb. 16, 2016), http://www.abc.net.au/news/2016-02-17/spain-agrees-to-extradite-art-fraud-suspect-to-us/7175124; *see also* M. H. Miller, *The Big Fake: Behind the Scenes of Knoedler Gallery's Downfall*, ARTnews (Apr. 25, 2016), www.artnews.com/2016/04/25/the-big-fake-behind-the-scenes-of-knoedler-gallerys-downfall/.  The fraud was so large and complex that news of it transcended the art world and has been featured and extensively analyzed by the general news media.[1]  Moreover, although Rosales faced criminal action and pleaded guilty, the Bergantiños Brothers have evaded extradition.  Raphael Minder, *Court Denies Extradition Request for*

---

[1] *E.g.*, Patricia Cohen, *A Gallery That Helped Create the American Art World Closes Shop After 165 Years*, N.Y. Times (Nov. 30, 2011), www.nytimes.com/2011/12/01/arts/design/knoedler-art-gallery-in-nyc-closes-after-165-years.html; *see also* Megan Chuchmach & Brian Ross, *Accused Master Art Forger Tracked Down in Shanghai*, ABC News (July 15, 2014), abcnews.go.com/Blotter/accused-master-art-forger-tracked-shanghai/story?id=24558288; Michael Shnayerson, *A Question of Provenance*, Vanity Fair (May 2012), www.vanityfair.com/culture/2012/05/knoedler-gallery-forgery-scandal-investigation; Tom Hays, *A New York City Jury Is Hearing about a Scandal in the Art World that Featured a Chinese Immigrant who Forged Fakes of Modern Masters in His Garage*, U.S. News (Feb. 1, 2016), https://www.usnews.com/news/business/articles/2016-02-01/nyc-jury-hears-details-of-modern-masters-forgery-scandal; Yanan Wang, *A Venerated Manhattan Gallery on Trial in Lawsuit after 'Genius' Forgeries Rake in $80 Million*, The Washington Post (Jan. 26, 2016), www.washingtonpost.com/news/morning-mix/wp/2016/01/26/a-venerated-manhattan-gallery-goes-on-trial-for-fraud-after-a-chinese-immigrants-forgeries-rake-in-80-million/?noredirect=on; Jennifer Smith, *Art-Forgery Trial Set to Begin*, The Wall Street Journal (Jan. 22, 2016), www.wsj.com/articles/art-forgery-trial-set-to-begin-1453484615; *American Greed* (CNBC television broadcast Aug. 20, 2018); and *60 Minutes* (CBS television broadcast May 22, 2016), Anderson Cooper, *$80 Million Con*, CBS News (May 22, 2016), https://www.cbsnews.com/news/60-minutes-80-million-art-fraud-anderson-cooper/.

*Spaniard Wanted in Art Fraud*, N.Y. Times (May 27, 2016), https://www.nytimes.com/2016/05/28/arts/design/court-denies-extradition-request-for-spaniard-wanted-in-art-fraud.html.

Plaintiffs learned that they had been the victims of fraud in late 2013 as a result of news reports covering the guilty plea by Rosales, and shortly thereafter Plaintiffs' attorneys began work crafting a Complaint bringing allegations against Rosales, Jose Carlos Bergantiños Diaz, and seven other defendants.  ECF 2;[2] *see* Declaration of Jeffrey I. D. Lewis ("Lewis Decl.") Ex. B at Invoice No. 798065.  On April 1, 2014, Plaintiffs filed their 53-page Complaint, with over 20 pages of exhibits, setting forth uncontroverted factual allegations establishing that the defendants conspired in a coordinated, concerted effort to defraud Plaintiffs of millions of dollars through the sale of forged artwork in violation of *inter alia* 18 U.S.C. § 1962(c) and (d) of RICO.  ECF 2.  Until that point many of the Defendants, aside from Rosales, were still refusing to admit that any fraud even had taken place.  Plaintiffs continued to hone their factual allegations after filing their initial Complaint and filed an Amended Complaint on May 13, 2014.  ECF 15.  Among other amendments, Plaintiffs added Jose Bergantiños's brother, Jesus Angel Bergantiños Diaz, as a defendant.  *Id.*

Serving process on the Bergantiños Brothers was a complicated affair.  Plaintiffs served Rosales with the summons and amended complaint, taking into account the ongoing criminal proceedings against her [ECF 102], but the Bergantiños Brothers' status as fugitives from U.S. justice living in Spain made their service more difficult.  Over the course of 2015, Plaintiffs' counsel worked extensively with co-counsel in Spain, Uria Menendez Abogados, S.L.P. to locate the Bergantiños Brothers and serve them.  *See* Lewis Decl. Ex. B at Invoice Nos. 816259, 819513, and 820227, Ex. C at Invoice Nos. 204768, 205365, and 206517, and Ex. I at Invoice

---

[2] As a result of the Defaulting Defendants' default, all of the allegations in Plaintiffs' Amended Complaint were taken as true.  [ECF 169.]

Nos. 2015/N/009602 and 2015/N/001663.  After expending significant hours on the issue, *see id.* Ex. A at 1-4, Plaintiffs succeeded, and the Spanish Court of First Instance and Trial Court No. 2 of Vilalba, Spain served the Bergantiños Brothers on June 1, 2015 and July 17, 2015, respectively.  ECF 89 and 97.  For the Court's reference, Plaintiffs prepared a spreadsheet, attached to Mr. Lewis' declaration as Exhibit A and filed under seal, showing the amounts, dates, and other details of the attorneys' fees recoverable as part of this award.

In the fall of 2015, Plaintiffs prepared papers for entry of default against the Defaulting Defendants, entering the requests on September 10, 2015 and October 23, 2015.  ECF 91 to 93.  During December 2015 and January 2016 Plaintiffs prepared papers in support of a motion for default judgment.  *See* Lewis Decl. Ex. C at Invoice Nos. 160100098 and 160101591; ECF 136 to 138.  Plaintiffs filed their motion for default judgment on January 12, 2016.  ECF 136.  In accordance with the Court's Scheduling Order [ECF 147], on June 8, 2016 Plaintiffs filed their 23-page proposed findings of fact and conclusions of law, including a detailed analysis of Plaintiffs' damages, and a declaration with accompanying exhibits.  *See* ECF 152 and 154.

Magistrate Judge Pitman issued his Report and Recommendation on June 8, 2018, recommending that Plaintiffs' motion be granted and that they be awarded treble damages, interest, costs, disbursements, and attorneys' fees.  ECF 169.  Judge Oetken adopted Magistrate Judge Pitman's Report and Recommendation on August 2, 2018 [ECF 176], and the Court issued the Default Judgment against the Defaulting Defendants on August 6, 2018 [ECF 176].

Plaintiffs' work in securing the Default Judgment against the Defaulting Defendants began in December 2013 and continued through the Court's granting of the Default Judgment.  The 234 hours of work invested by Plaintiffs' counsel, *see* Lewis Decl. Ex. A, were warranted in view of the complexity of the case and the service issues involved.  And the outcome of the case

– the Court's granting of a motion for default judgment – indicates that the time and effort were well spent.  *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."); *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("[W]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").

        C.      **The Hourly Rates Charged by Plaintiffs' Counsel Were Reasonable**

"The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  Thus, the hourly rate should be in line with rates "prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation."  *Sugarman v. Vill. of Chester*, 213 F. Supp. 2d 304, 309 (S.D.N.Y. 2002).  Courts in the Second Circuit generally require "use of the hourly rates employed in the district in which the reviewing court sits."  *Bergerson*, 652 F.3d at 290; *see also Adorno v. Port Auth. of N.Y. and N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) ("A court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district, as well as on evidence proffered by the parties.").  A court looks not to historical rates but to current rates.  *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

Here, the requested rates charged by Plaintiffs' counsel are reasonable given: (1) the prevailing market rates in the Southern District of New York, (2) the experience and expertise Plaintiffs' counsel brought to the litigation, and (3) the complexity of the matter and the results achieved.  Plaintiffs paid from $█████ to $█████ per hour for the work of Jeffrey I. D. Lewis, a partner at leading New York law firms, with over thirty years' experience litigating cases before

U.S. Federal District Courts and Courts of Appeals.[3]  *See* Lewis Decl. Ex. J.  The hourly rate for work by associates and counsel in this matter ranged from $▮ to $▮.  Lewis Decl. Ex. A.  These rates are commensurate with the hourly rates for partners, counsel, and associates at comparable firms in the Southern District of New York.  *See* Lewis Decl. Ex. F.  They are well within the range of reasonableness recognized by Judge Forrest of this District in her decision in *Regeneron*, where the court found that hourly rates of $775–$1,355 and $450–$965, as charged by another prominent law firm, Kirkland & Ellis LLP, for the services of its partners and associates, respectively, were within the range of reasonableness for the Southern District of New York.  *Regeneron*, 2018 WL 3425013, at *4-5; *see Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 426 (S.D.N.Y. 1999) ("[P]art of the reason attorneys at prominent New York law firms are entitled to charge higher rates is that higher overhead and higher costs are associated with such practice.")

The fees requested here are actual fees incurred and paid by the Plaintiffs.  It was reasonable for Plaintiffs to retain experienced counsel at a leading law firm to litigate this complex RICO action that involved frauds perpetrated by ten defendants in three countries over the course of several years; the complexity and importance of this case required a high caliber of lawyering.  *See Arbor Hill*, 522 F.3d at 184.

## II.     Plaintiffs' Costs and Disbursements Incurred in the Litigation

In accordance with well-settled law, the Court also awarded costs and disbursements incurred in prosecuting Plaintiffs' RICO action against the Defaulting Defendants.  ECF 169,

---

[3] As reflected in his declaration, Mr. Lewis worked at the law firms of Patterson, Belknap, Webb & Tyler LLP, Fried, Frank, Harris, Shriver & Jacobson LLP, and Norton Rose Fulbright US LLP during his representation of Plaintiffs in this matter.  Lewis Decl. ¶ 5.  The invoices attached as exhibits to the declaration provide the various fees, their dates, and the relevant services provided by Mr. Lewis and his colleagues at these three law firms.  *See* Lewis Decl. Exs. B-D.

175, and 176.  This is in accord with the statutory authority.  *See* 18 U.S.C. § 1964(c).  *See also*, *e.g.*, *Ibarra v. HSCS Corp.,* No. 10 Civ. 5109(KBF), 2012 WL 3964735, *5 (S.D.N.Y. Sept. 10, 2012) ("Costs are ordinarily recoverable if they are incidental and necessary to the litigation.").

As reflected in the invoices attached to the Lewis Declaration and in a Bill of Costs, filed separately pursuant to Local Rule 54.1, Plaintiffs seek $400 in costs and $3,965 in disbursements incurred concerning the Defaulting Defendants.  *See* Lewis Decl. ¶ 8, Ex. B at Invoice No. 798065, Ex. C at Invoice No. 206517, Ex. I at Invoice Nos. 2015/N/009602 and 2015/N/001663, and Exs. G-H.  For the Court's reference, Plaintiffs prepared two spreadsheets, attached to Mr. Lewis' declaration as Exhibits G and H, showing the disbursements and costs incurred concerning the Defaulting Defendants.  These amounts include, *inter alia*, filing fees and disbursements for service of summonses and the Amended Complaint upon the Bergantiños Brothers.  *Id.*

## CONCLUSION

For the reasons set forth above, attorneys' fees, costs, and disbursements should be awarded to Plaintiffs in the amounts of $164,244.44, $400, and $3,965, respectively.

Dated: August 30, 2018
      New York, New York

NORTON ROSE FULBRIGHT US LLP


By: /s/ *Jeffrey I.D. Lewis*
Jeffrey I. D. Lewis
  jeffrey.lewis@nortonrosefulbright.com
John P. Figura
  jack.figura@nortonrosefulbright.com
1301 Avenue of the Americas
New York, New York  10019-6022
(212) 318-3000
(212) 318-3400

*Attorneys for Plaintiffs Frank J. Fertitta, III and Eykyn Maclean, LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to all counsel of record on August 30, 2018 via electronic service.

                                                    *Jeffrey I.D. Lewis*
                                                    Jeffrey I.D. Lewis